UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEVELAND HARVILLE,                    )
                                       )
                    Plaintiff,         )          Case No.
                                       )          Hon.
        v.                             )
                                       )
CITY OF WARREN, a Michigan             )
municipality, JAMES TWARDESKY,         )
GREGORY BOOTON, WILLIAM                )
MIERZWINSKI, ADAM HUFFMAN and          )
JOHN GAJEWSKI, in their individual     )
capacities,                            )
                                       )
                    Defendants.        )

_____/

Joel B. Sklar (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
(313)964-1702

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, Cleveland Harville, by and through his attorneys Joel B. Sklar and Todd Russell Perkins, files this Complaint against Defendants James Twardesky, Gregory Booton, William Mierzwinski, Adam Huffman and John Gajewski and the City of Warren and says:

1.   Plaintiff Cleveland Harville is a resident of Wayne County, Michigan which is located within this Judicial District.

2.   Defendant City of Warren is a Michigan municipality which operates the City of Warren Police Department and is located within this Judicial District.

3.   Defendant James Twardesky is a resident of and/or transacts business in Macomb County, Michigan which is located within this Judicial District.

4.   Defendant Gregory Booton is a resident of and/or transacts business in Macomb County which is located within this Judicial District.

5.   Defendant William Mierzwinski is a resident of and/or transacts business in Macomb County, Michigan which is located within this Judicial District.

6.   Defendant Adam Huffman is a resident of and/or transacts business in Macomb County, Michigan which is located within this Judicial District.

7.   Defendant John Gajewski is a resident of and/or transacts business in Macomb County, Michigan which is located within this Judicial District.

8.   During all relevant times, James Twardesky, Gregory Booton, William Mierzwinski, Adam Huffman and John Gajewski were acting under color of

law and are being sued in their individual capacity pursuant to 42 USC §1983.

9.    Defendants James Twardesky, Gregory Bootin, William Mierzwinski, Adam Huffman and John Gajewski are not entitled to qualified or any other immunity because each knowingly and intentionally violated Plaintiff's clearly established *Fourth Amendment Rights* which any reasonable person would have known.

10.   Defendants James Twardesky, Gregory Booton, William Mierzwinski, Adam Huffman and John Gajewski are not entitled to qualified or any other immunity because each knowingly and intentionally violated Plaintiff's clearly established *Fourteenth Amendment Rights* which any reasonable person would have known.

11.   Defendant Twardesky and the individual co-Defendants are not immune for their gross negligence pursuant to MCLA 691.1407(2)(c).

12.   This Court has original jurisdiction over these claims pursuant to 28 USC § 1331 and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367.

13.   Venue is proper in this Court pursuant to 28 USC § 1391(a)(1) and (2) since the events giving rise to this claim all occurred within this Judicial District.

## **FACTS**

14.   Plaintiff reasserts word for word and paragraph for paragraph each of the

above allegations.

15.   On or about October 31, 2019, the City of Warren Police Department ("WPD") learned of a possible hazing incident that occurred at Warren De La Salle High School (Warren De La Salle) "several weeks ago" which involved members of the school's varsity football team.

16.   The hazing allegations were widely reported and an embarrassment for Warren De La Salle, the players allegedly involved and their families.

17.   The Warren police were told that a Warren De La Salle varsity football player, E.D., was physically assaulted during a traditional hazing practice at De La Salle known as "Broom sticking."

18.   On information and belief, Broom sticking involved one student holding down another while others poked him with a broom stick over his clothing.

19.   The hazing tradition took place in the locker-rooms after team dinners the Thursday preceding the Friday night game.

20.   When it learned of the practice, Warren De La Salle conducted its own investigation and obtained dozens of written statements from various members of the varsity football team which were later provided to the Warren police.

21.   Warren De La Salle also suspended the three players accused of the hazing, R.P., J.C. and J.S., all of whom are Black or Brown.

22.   None of the written statements identified or implicated Plaintiff in any way nor could they since Plaintiff was not enrolled at Warren De La Salle nor a member or participant of the school's football team at the time of the alleged assaults.

23.   The WPD assigned Defendant James Twardesky, head of its' Special Victims Unit, as the Officer in Charge (OIC) of the investigation.

24.   Defendant Twardesky, as the OIC, was primarily responsible for the investigation into the alleged hazing at De La Salle.

25.   Defendant Twardesky was assisted by fellow WPD detectives, Defendants Booton, Mierzwinski, Huffman and Gajewski ("Investigative Team").

26.   From November 1, 2019, through November 5, 2019, Defendant Twardesky and his Investigative Team conducted over 60-interviews of witnesses including Warren De La Salle students, parents, staff, administration, and others about the alleged hazing.

27.   None of these persons identified, mentioned, or referred to Plaintiff in any way whatsoever.

28.   On November 5, 2019, Defendant Twardesky interviewed J.H. who told the detective that he had never been broom sticked but that "Another former player Cleveland attempted this year [after a team dinner] as well but was unsuccessful."

29. Both white and Black players were accused of being participants in the alleged hazing.

30. On November 8, 2019, Defendant Twardesky and his Investigative Team prepared felony warrant requests for various Black teen players, R.P., J.C. and J.S.

31. Plaintiff, also a Black teen, was not among those for whom Defendant Twardesky and his Investigative Team recommended or requested warrants.

32. Defendant Twardesky presented the felony warrant requests to the Macomb County Prosecutor who referred the matter to the St. Clair County Prosecutor because of a potential conflict with the Macomb County Prosecutor's Office.

33. The Macomb County Prosecutor was conflicted because one Warren De La Salle varsity player, J.H., was the son of a Macomb County Assistant Prosecuting Attorney.

34. On or about January 10, 2020, R.P., J.C. and J.S.--the three players for whom warrants were sought-- returned to De La Salle from their suspension.

35. On January 24, 2020, Defendant Twardesky met with the parents and students involved in the alleged hazing, including students E.D., J.H., N.Y., C.B. and their parents.

36. At this meeting, J.H. told Defendant Twardesky and his Investigative Team he lied when he first told police he had not been "assaulted."

37.   At this meeting, J.H.'s parents, one of whom was a Macomb County Assistant Prosecuting Attorney, "wanted criminal charges requested for their son."

38.   On January 27, 2020, Defendant Twardesky and his Investigative Team emailed the St. Clair County Prosecutor to inform them of additional statements from J.H., N.Y., and C.B.

39.   On January 28, 2020, the St. Clair County Prosecutor released a statement that it would not be authorizing any charges related to the alleged hazing.

40.   Defendant Twardesky nevertheless continued his investigation of the Black teens accused of hazing.

41.   On January 29, 2020, Twardesky interviewed former Warren De La Salle football player C.B. who claimed he saw N.Y. get hazed on September 21, 2020.

42.   Plaintiff was not among the five players identified by C.B. as a participant in N.Y.'s alleged hazing or present during the alleged incident.

43.   On January 29, 2020, N.Y. provided a written statement to Defendant Twardesky and his Investigative Team concerning his assault by S.B., G.L., M.K., J.C., and R.P., all Black teens, after a team dinner on September 5, 2019.

44.   N.Y. also told Defendant Twardesky and his Investigative Team that he witnessed the assault of J.H. on September 5, 2019.

45.   Plaintiff was not mentioned or otherwise identified as a participant by N.Y., nor could he be since Plaintiff was not enrolled at Warren De La Salle, on the football team or at the team dinner on September 5, 2019.

46.   On January 29, 2020, J.H. provided Twardesky a second written statement which conflicted with his first.

47.   On January 29, 2020, J.H. told Defendant Twardesky and his Investigative Team that Plaintiff placed J.H. in a reverse headlock while several unidentified teammates placed J.H. on the ground and struck him with a broom stick in the locker-room after the team dinner on September 5, 2019.

48.   J.H. explained he lied to Twardesky when he spoke to him before about "Cleveland because I was embarrassed and afraid to tell my parents the truth."

49.   Defendant Twardesky and his Investigative Team knew that J.H.'s accusation was implausible if not impossible because Plaintiff was neither enrolled as a student nor a member of the football team on September 5, 2019.

50.   In addition, Defendant Twardesky and his Investigative Team had already conducted dozens of interviews and reviewed dozens of written statements, none of which mentioned, referred, implicated, or otherwise identified Plaintiff as a participant in any criminal activity whatsoever.

51.   On January 29, 2020, another varsity player, C.B., told Defendant Twardesky and his Investigative Team that he witnessed J.H.'s assault.

52.   C.B. made no mention, identification, or reference to Plaintiff.

53.   C.B. told Defendant Twardesky and his Investigative Team that a white player, G.T., was the "main person" in the September 5, 2019, assault of J.H.

54.   Defendant Twardesky and his Investigative Team never investigated or charged G.T. for with a crime as they investigated and charged similarly situated Black and Brown players.

55.   On January 31, 2020, student varsity football player M.B. spoke to Defendant Twardesky and his Investigative Team and stated he too saw the assault of J.H.

56.   M.B. made no mention, identification, or reference to Plaintiff.

57.   Neither Defendant Twardesky nor any member of his Investigative Team spoke to Plaintiff or his parents about J.H.'s inherently implausible allegations.

58.   Plaintiff was never interviewed by anyone concerning the allegations because he was not a student at Warren De La Salle nor football team member at the time of the alleged September 5, 2019, assault of J.H. and, therefore, could not possibly have been involved in the alleged assault.

59.   On February 5, 2020, Defendant Twardesky and his Investigative Team prepared and presented felony warrant requests to the St. Clair County

Prosecutor for Plaintiff and other Black and Brown teens for the alleged September 5, 2019, assault of J.H.

60.     On information and belief, the St. Clair County Prosecutor's Office again rejected the warrant requests submitted by Defendant Twardesky and his Investigative Team.

61.     Undeterred, on February 5, 2020, Defendant Twardesky swore out Misdemeanor Complaints in the 37th District Court against Plaintiff and other Black and Brown teens for the alleged September 5, 2019, assault.

62.     Based on Twardesky's sworn representations and material omissions, a misdemeanor arrest warrant was issued for Plaintiff's arrest for the alleged September 5, 2019, assault of J.H.

63.     Among other things, Defendant Twardesky failed to advise the issuing court of J.H.'s inconsistent statements, the lack of corroborating evidence, the fact the St. Clair County Prosecutor rejected his earlier warrant request, or the irrefutable fact that Plaintiff was neither enrolled at De La Salle nor a member of the football team on September 5, 2019--the date of J.H.'s alleged assault.

64.     Once he learned of the arrest warrant, Plaintiff turned himself in, had his mug shot taken, was fingerprinted, processed, and detained.

65.     Plaintiff's arrest was heavily reported and publicized.

66.    Colleges which had expressed interest in Plaintiff stopped communications and offers to further his football and educational opportunities withdrawn.

67.    An independent third-party investigation found no player at-fault and suggested the actions taken against the Black and Brown players had racial implications and undertones.

68.    After his arrest, Plaintiff voluntarily took and passed two polygraph tests which further confirmed his innocence and the falsehood of J.H.'s inherently unreliable and implausible allegations of Plaintiff's alleged criminal activity.

69.    On May 27, 2020, the state district court granted the local prosecutor's *Motion for Nolle Prosequi* and dismissed the misdemeanor charges against Plaintiff.

70.    Ultimately, all criminal charges against the Black teens initiated by Defendant Twardesky and his Investigative Team were dismissed.

## COUNT I

**VIOLATION OF CLEVELAND HARVILLE'S**
***FOURTH AMENDMENT* RIGHTS AGAINST FALSE ARREST AND MALICIOUS PROSECUTION PURSUANT TO 42 USC §1983**

71.    Plaintiff reasserts word for word and paragraph for paragraph each of the above allegations.

72.    The *Fourth Amendment* guarantees a citizen's right not to be seized or charged with a crime without probable cause.

11

73.   An officer possesses probable cause when, at the moment the officer seeks the arrest, the facts and circumstances within the officer's knowledge and of which he had *trustworthy* information are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.

74.   J.H.'s inconsistent, conflicting, uncorroborated allegations were legally insufficient to create probable cause.

75.   At the time he prepared and submitted Plaintiff's warrant request, Defendant Twardesky and his Investigative Team had completed dozens of interviews with witnesses with knowledge, none of whom mentioned, identified or implicated Plaintiff or otherwise bolstered J.H.'s inconsistent statements.

76.   At the time he prepared and submitted the warrant request, Twardesky and his Investigative Team had reviewed dozens of written statements from persons with knowledge none of whom mentioned, identified or implicated Plaintiff in any criminal activity or otherwise bolstered J.H.'s inconsistent statements.

77.   Defendant Twardesky and his Investigative Team knew the allegations made by J.H. were implausible because Plaintiff was neither a student of Warren De La Salle nor a member of the football team on September 5, 2019, the date of J.H.'s alleged assault.

78.   Defendant Twardesky and his Investigative Team knew as a matter of fact and law that the information provided about Plaintiff was inconsistent, unreliable,

implausible, wrong, and woefully insufficient for probable cause constitutionally required for the issuance of a warrant for Plaintiff's arrest.

79.   Defendant Twardesky and his Investigative Team committed a fraud against the Court when Defendants knowingly and deliberately failed to advise the magistrate of J.H.'s inconsistent statements, the lack of any evidence to corroborate J.H.'s conflicting stories, the rejection of warrant requests by the St. Clair County Prosecutor, or the known fact that Plaintiff was neither on the football team nor enrolled at Warren De La Salle on the date of J.H.'s alleged September 5, 2019, assault.

80.   Probable cause does not exist where "there is apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding the evidence." *Wesley v Campbell,* 779 F 3d 421 (6th Cir.2015).

81.   Defendant Twardesky and his Investigative Team knowingly violated clearly established law when Twardesky requested and swore out a complaint for Plaintiff's arrest knowing it was false and inherently implausible, if not impossible, that Plaintiff had committed the crime charged.

82.   Defendant Twardesky and his Investigative Team knowingly violated clearly established law when Twardesky made material omissions that were

deliberate and in reckless disregard of the truth in order to unlawfully obtain a warrant for Plaintiff's arrest and malicious prosecution.

83. Defendant Twardesky and his Investigative Team initiated and/or caused to be issued criminal charges against Plaintiff knowing that Plaintiff had not committed any crime and that the requisite probable cause did not and could not exist.

84. Defendant members of the Investigative Team had a constitutional obligation to intervene and stop Defendant Twardesky from causing a warrant to be issued for the wrongful arrest and malicious prosecution of Plaintiff.

85. Defendant members of the Investigative Team violated and breached their respective constitutional duty to intervene and stop Twardesky from violating Plaintiff's civil rights.

86. The utter lack of probable cause for the issuance of the subject warrant was further demonstrated by the St. Clair County Prosecutor's rejection of Twardesky's first warrant request, his second warrant request and the May 27, 2020, dismissal of criminal charges against Plaintiff.

87. As a direct and proximate result of the violation of Plaintiff's clearly established *Fourth Amen*dment rights against unreasonable search, seizure and malicious prosecution, Plaintiff lost opportunities to play football at the collegiate level, lost educational opportunities that offered for personal and

economic advancement, suffered embarrassment, indignity, loss of reputation in the community, loss of the enjoyments of life, isolation, depression, frustration, anxiety, emotional distress and other economic and non-economic injuries that will continue to develop and manifest during and beyond this litigation.

88. In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against Defendant Twardesky and his Investigative Team under *42 USC § 1983,* in that the actions of Twardesky and his Investigative Team was willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants Twardesky, Booton, Mierzwinski, Huffman and Gajewski, jointly and severally, for damages in whatever amount Plaintiff is entitled, which is reasonable, fair and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

## COUNT II

### VIOLATION OF PLAINTIFF'S *FOURTEENTH AMENDMENT* EQUAL PROTECTION RIGHTS PURSUANT TO 42 USC §1983

89. Plaintiff reasserts word for word and paragraph for paragraph each of the above allegations.

90. The *Fourteenth Amendment's Equal Protection Clause* provides:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

91. Plaintiff, as a Black male, is among the class of persons protected under the *Equal Protection Clause*.

92. Defendant Twardesky and his Investigative Team were inclined and predisposed to treat similarly situated Black and Brown persons differently from white persons and did so with Plaintiff.

93. Defendant Twardesky and his Investigative Team only investigated and charged Black and Brown players, not similarly situated white players like G.T. who was identified by an eye-witness as the "main person" responsible for the September 5, 2019, assault of J.H.

94. Had Plaintiff been white, he would not have been investigated, charged with a crime, arrested, or detained.

95. Defendant Twardesky and his Investigative Team violated Plaintiff's clearly established *Fourteenth Amendment Equal Protection* rights when they caused a misdemeanor assault charge to be issued against Plaintiff because of his race and knowing that no probable cause or other justification existed to support or otherwise sustain the charge, detention and prosecution of Plaintiff.

96. Defendant Twardesky and his Investigative Team are not entitled to qualified immunity for the violation of Plaintiff's clearly established *Fourteenth*

*Amendment* rights of which any reasonable person would know.

97.   As a direct and proximate result of the violation of Plaintiff's clearly established *Fourteenth Amen*dment rights, Plaintiff lost opportunities to play football at the collegiate level lost educational opportunities that offered for personal and economic advancement, suffered embarrassment, indignity, loss of reputation in the community, isolation, depression, frustration, anxiety, emotional distress and other economic and non-economic injuries that will continue to develop and manifest during and beyond this litigation.

98.   In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against Defendant Twardesky and his Investigative Team under *42 USC § 1983,* in that the actions of Twardesky and his Investigative Team was willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY,** Plaintiff seeks judgment against Defendants Twardesky, Booton, Mierzwinski, Huffman and Gajewski, jointly and severally, for damages in whatever amount Plaintiff is entitled, which is reasonable, fair, and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

## COUNT III

### *MONELL* CLAIM AGAINST THE CITY OF WARREN

99.    Plaintiff reasserts each allegation above, word for word and paragraph for paragraph.

100.   At the time of the constitutional deprivations discussed above, Defendant City of Warren had an illegal policy or custom of treating Black and Brown persons differently from white persons in violation of the *Fourteenth Amendment's Equal Protection Clause,* including differing application and a double-standard for probable cause lawfully necessary for an arrest warrant under the *Fourth Amendment.*

101.   At the time of the constitutional deprivations described above, the City of Warren failed to properly train its officers in diversity, and, in fact, trained, expected, and encouraged officers to treat Black citizens differently from similarly situated white citizens, as Plaintiff was treated in this case.

102.   At the time of the constitutional deprivations described above, the unconstitutional acts and omissions of the Defendant Twardesky and his Investigative Team was ratified by an official with final decision-making authority (i.e., the Chief of Police) and demonstrates a custom of acquiescence and tolerance to the Warren police officers treating Black citizens differently from similarly situated white citizens as to the application of probable cause,

as Plaintiff was treated in this case.

103. This unconstitutional policy and custom was evidenced by the approval of the individual Defendants' superiors, the lack of any discipline to the police officers and the deliberate failure to disclose or otherwise be truthful and fulsome in their warrant requests and recommendations.

104. As a direct and proximate result of the violation of Plaintiff's clearly established *Fourth and Fourteenth Amen*dment rights, Plaintiff lost opportunities to play football at the collegiate level, lost educational opportunities that offered for personal and economic advancement, suffered embarrassment, indignity, loss of reputation in the community, loss of the enjoyments of life, isolation, depression, frustration, anxiety, emotional distress and other economic and non-economic injuries that will continue to develop and manifest during and beyond this litigation.

105. In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendants under *42 USC § 1983,* in that the actions of each of these individual Defendants were malicious, willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendant City of Warren for damages in whatever amount Plaintiff is entitled, which is reasonable,

fair, and just, plus costs, interest, and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

## COUNT IV

### GROSS NEGLIGENCE AS TO DEFENDANT TWARDESKY AND HIS INVESTIGATIVE TEAM

106.   Plaintiff reasserts each allegation above, word for word and paragraph for paragraph.

107.   Defendant Twardesky and his Investigative Team were on duty and acting within the scope of their employment and authority by Defendant City of Warren when they engaged in the unlawful conduct alleged above and caused a misdemeanor charge against Plaintiff for a crime Twardesky and his Investigative Team knew he did not commit.

108.   Defendant Twardesky and his Investigative Team engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Plaintiff.

109.   As a direct and proximate result of the violation of Defendant Twardesky and his Investigative Team's gross negligence, Plaintiff lost opportunities to play football at the collegiate level, lost educational opportunities that offered for personal and economic advancement, suffered embarrassment, indignity, loss of reputation in the community, loss of the enjoyments of life, isolation, depression, frustration, anxiety, emotional distress and other economic and

other injuries that will continue to develop and manifest during and beyond this litigation.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants, jointly and severally, for damages in whatever amount Plaintiff is entitled, which is reasonable, fair and just, plus costs, interest and reasonable attorney fees.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
Stephen Chacko (P78210)
THE PERKINS LAW GROUP, PLLC
615 Griswold, Suite 400
Detroit, MI 48226
(313) 964-1702

Dated:  January 25, 2022        Attorneys for Plaintiff

## **<u>JURY DEMAND</u>**

Plaintiff, Cleveland Harville, by and through his attorneys, hereby demands a jury trial in the above captioned matter.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
Stephen Chacko (P78210)
THE PERKINS LAW GROUP, PLLC
615 Griswold, Suite 400
Detroit, MI 48226
(313) 964-1702

Dated:  January 25, 2022         Attorneys for Plaintiff