## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CLEVELAND HARVILLE,

              Plaintiff,                          Case No. 22-10154

v.                                       Hon. Denise Page Hood

CITY OF WARREN, JAMES
TWARDESKY, GREGORY BOOTON
and ETHAN VINSON,

              Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#24)

## I.     BACKGROUND

On January 25, 2022, Plaintiff Cleveland Harville, III filed the instant action alleging: Violation of Fourth Amendment Rights Against False Arrest and Malicious Prosecution 42 U.S.C. § 1983 (Count I); Violation of Fourteenth Amendment Equal Protection Rights Pursuant to 42 U.S.C. § 1983 (Count II); *Monell* Claim against the City of Warren (Count III); and, Gross Negligence as to Defendant Twardesky and his Investigative Team (Count IV).  The remaining Defendants are:  the City of Warren, James Twardesky, Gregory Booton and Ethan Vinson.

Harville, a black male, was a student-athlete of Warren De La Salle Collegiate High School ("DLS"), an all boys Catholic school, which is mostly

White.   (Harville Dep. Tr. at 28; ECF No. 27, PageID.524) He played varsity baseball and football heading into his senior year in the Fall of 2019.   (*Id*. at 31-32; ECF No. 27, PageID.525) Harville participated in travel baseball with the Detroit Arsenal and trained with the DLS football team once or twice a week.   (*Id*. at 39-40, 143-146; ECF No. 27, PageID.527, .553-.554) The DLS hosted a team dinner after practice every Thursday evening before their Friday night game.   (*Id*. at 140; ECF No. 27, PageID.552; Twardesky Dep. at 54-55; ECF No. 27, PageID.593)

The first game of the Fall 2019 football season was Friday, August 30, 2019. (ECF No. 27, PageID.828) Harville was returning home from a baseball tournament on Thursday, August 29, 2019 and missed the team dinner and never made it to DLS that night.   (Harville Dep. at 39-40, 46, 86, 143-144; ECF No. 27, PageID.527, .529, .539, .553) Harville did play in the Friday, August 30, 2019 football game.

At the end of the 2018/2019 school year, Harville was on the ineligible list for athletics.   (Harville Dep. at 28-34, 39-40; ECF No. 27, PageID.524-.526) On September 2, 2019, the day before school began, Harville withdrew from DLS, left the football team and never set foort on the DLS campus again.   (Harville Dep. at 37-38, 43; ECF No. 27, PageID.526-.528) Harville finished high school at home

and received his diploma from the Michigan International Academy. (Harville Dep. at 26; PageID.524)

In October 2019, DLS administration received a call from a parent of a varsity football player concerned that her son was about to be "broom-sticked." (ECF No. 24, PageID.292) Students described broom-sticking as a having of underclassmen mostly by seniors where a group of boys hold a fully clothed teammate down or lift him in the air and poke him in the thighs and buttocks with a broomstick, with no penetration and no injury. (*Id*. at PageID.330) Dean Widdows met with the varsity football team to discuss the hazing allegations on October 28, 2019. Widdow collected written statements from the players. On October 31, 2019, DLS cancelled the remaining football season and suspended three Black students accused of broom-sticking Ethan Desjardine. (ECF No. 27, PageID.846) Desjardine told Widdows that three Black players (which did not include Harville) "broom-sticked" him in the varsity locker room after the Thursday, October 10, 2019 team dinner. (ECF No. 24, PageID.292, .289-294) Principal Knight contacted Defendant City of Warren Police Department. Defendant Twardesky was the officer in charge. (Twardesky Dep. at 7, 29, 31; ECF No. 27, PageID.581, .586-.587)

3

Desjardine refused to speak with investigators and on November 7, 2019, Michael Desjardine, Ethan's father, met with Twardesky and Sgt. Booton at the WPD, and signed a waiver of prosecution indicating his son did not feel like he was assaulted.  (ECF No. 24, PageID.278) Lt. Barnes was in charge of the WPD Criminal Investigations Divisions, Detective Bureau.  Barnes supervised Booton, who supervised Twardesky.  Barnes testified that under WPD's "unwritten practice," detectives have virtually no discretion and must submit warrant requests even if the officer there was no probable cause for the warrant.  (Barnes Dep. at 10-14; ECF No. 27, PageID.961-.962; Booton Dep. at 35-44, 48-49, 57-59; ECF No. 27, PageID.654-.657, .659-.660; Twardesky Dep. at 46; ECF No. 27, PageID.591) Twardesky submitted a misdemeanor warrant to then-Macomb County Prosecutor Eric Smith, for assault charges against the three suspended Black players for Desjardine's broom-sticking.  (ECF No. 27, PageID.974-.976) Smith and his office recused, and on November 27, 2019, the Michigan Attorney General appointed St. Clair County Prosecuting Attorney Michael D. Wendling as Special Prosecutor.  St. Clair County APA Josh Sparling was assigned the case. (Sparling Dep. at 5; ECF No. 27, PageID.980)

Dean Widdows told Sparling that another student, John Hunt, was broom-sticked at the beginning of the season, but Harville was never mentioned by

4

Hunt to Widdows.  (Sparling Dep. at 13-14, 18; ECF No. 27, PageID.982-.983) On December 27,2019, Hunt spoke to Sparling and said he was a victim but could not identify anyone.  (Sparling Dep. at 34-35; ECF No. 27, PageID.988) The investigation continued through January 2020 which included other student victims, including Nick Yee.  Harville was not mentioned in any of the statements by the students.

On January 29, 2020, Twardesky met with Hunt and his father.  Hunt, Sr. Wrote out a statement for his son "that Cleveland Harville & Michael Young grabbed him in the locker room after a Thursday night team dinner."  (ECF No. 24, PageID.282) Hunt was embarrassed and afraid to tell the truth, which is why he previously lied to the school, police and the prosecutor.  (*Id*.)  Hunt indicated that the assault by Harville occurred at a team dinner before the first game.  Yee, and another student, corroborated that they observed Hunt being attacked. (Twardesky Dep. at 23-24; ECF No. 27, PageID.585); Sparling Dep. at 54-55, 83-84; ECF No. 27, PageID.993, .1000)

Twardesky claims he did not consider the broom-sticking a "sex crime", but juvenile horseplay.  (Twardesky Dep. at 80; ECF No. 27, PageID.599) He claims that Lt. Barnes ordered him to submit warrant requests, but Barnes denied this statement, nor did Booton ordered Twardesky to submit the warrant requests.  On

February 5, 2020, Twardesky submitted warrant requests to APA Sparling for seven Black players accused of broom-sticking Yee and Hunt.  (ECF No. 24, PageID.283-.360)  Twardesky claimed that he phoned APA Sparling recommending that Sparling deny all the warrant requests.   (Twardesky Dep. at 41, 137; ECF No. 27, PageID.589, .613; Sparling Dep. at 60; ECF No. 27, PageID.994) Sparling was surprised that they even submitted warrant requests and then ask him not to authorize the requests.  (Twardesky Dep. at 22, 115; ECF No. 27, PageID.; Sparling Dep. at 23, ECF No. 27, PageID.985)

On February 21, 2020, Detective McCabe, based on the information from Twardesky, swore to the district judge that Hunt's alleged assault occurred on Thursday, September 5, 2019.  (ECF No. 25, PageID.451) Twardesky called Harville's mother indicating her son was going to be charged and to turn himself in.  (D. Harville Dep. at 47-48; ECF No. 27, PageID.633) Harville complied, was handcuffed, arraigned, detained in a holding cell for several hours and then released to his parents.  (ECF No. 27, PageID.1023-.1031;  D. Harville Dep. at 52-53, 55; ECF No. 27, PageID.634-.635)

On March 12, 2020, Harville's criminal defense counsel notified APA Sparling that Harville had disenrolled from the school on September 2, 2019. (Sparling Dep. at 89-90; ECF No. 27, PageID.1001-.1002)   Sparling had indicated

to the district court he intended to amend the date on the complaint from September 5, 2019 to August 29, 2019, but this was never done.   (Sparling Dep. at 87-89, 112; ECF No. 27, PageID.1001, .1007) After Harville took two polygraph tests, all criminal charges against Harville were unconditionally dismissed on May 27, 2020.   (Sparling Dep. at 17; ECF No. 27, PageID.983; ECF No. 27, PageID.1090)   This action followed.

This matter is now before the Court on the remaining Defendants' Motion for Summary Judgment.   A response and reply have been filed and a hearing held on the matter.

## II.   ANALYSIS

### A.   Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id*.   Although the Court must view the

motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).   Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.   *Celotex Corp.*, 477 U.S. at 322-23.   A court must look to the substantive law to identify which facts are material.   *Anderson*, 477 U.S. at 248.

### B.   Supervisory Liability

Defendant Booton, a sergeant, seeks dismissal claiming Harville cannot show liability under a theory of supervisory liability as to Twardesky's actions.

To establish liability of any individual defendant, the plaintiff must show that the particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode,* 423 U.S. 362, 371 (1976); *Heyerman v.*

*Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).   Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act.   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).   Personal liability of supervisory personnel must be based on more than merely the right to control employees.   *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982).   There must be facts alleging that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.   *Id.* at 874. The doctrine of *respondeat superior* does not apply to § 1983 claims, unless a plaintiff shows that the defendants themselves acted on account of a constitutionally protected characteristic.   *Iqbal*, 556 U.S. at 683; *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)(citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

Twardesky directly reported to Sgt. Booton.   Booton asserts he did not make any decisions about who to interview, did not reach any conclusions about who to charge and did nothing to further any charges against Harville.   (Booton Dep., 51-54; 59-61)

Harville responds that Booton interviewed witnesses and reviewed Twardesky's Investigation Summary.   Harville claims that Booton observed

Twardesky's constitutional violations, but failed to stop his unlawful conduct and failed to intervene.

Harville does not cite to any specific actions Booton made to show that he participated in the decision to prosecute.  There is no evidence submitted, other than Harville's conclusory statement, that Booton implicitly authorized or knowingly acquiesced in Twardesky's actions to submit Harville's name for a warrant.  Harville has not carried his burden that Booton was personally involved in submitting Harville's name to the prosecutor for an arrest warrant to issue.  Booton must be dismissed from this action since Harville has not shown that Booton was personally involved in seeking prosecution as to Harville.

### C.   Qualified Immunity

#### 1.   Standard

Defendant Twardesky seeks dismissal of Counts I and II based on qualified immunity.   Harville asserts Twardesky is not entitled to qualified immunity.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not clearly establish statutory or constitutional rights of which a reasonable person would have known."   *Estate of Carter v. Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).   In analyzing a

qualified immunity case, courts must interpret the evidence in light most favorable to the party asserting the injury. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court must look to two factors: 1) whether the action violated a constitutional right; and, 2) whether that constitutional right was clearly established such that a reasonable officer would understand that what he was doing would violate that right. *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir. 2006). The court has the discretion to conduct this analysis in any order. *Eldridge v. City of Warren,* 533 Fed. Appx. 529, 532 (6th Cir. 2013). The "clearly established" inquiry, "must be undertaken *in light of the specific context of the case*, not as a broad general proposition ..." *Saucier,* 533 U.S. at 201 (emphasis added). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202. If the constitutional right was not clearly established, the motion for qualified immunity should be granted. If a defendant challenges the plaintiff's version of the facts, an issue of fact is created, and qualified immunity must be denied. *See, Johnson v. Jones,* 515 U.S. 304 (1995). However, even if a defendant challenges the plaintiff's version of the facts, a court may grant qualified immunity if one of the parties' accounts is "blatantly

11

contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### 2.   Count I,   Fourth Amendment Rights Against False Arrest

A plaintiff may prevail on a false arrest claim, even where a prosecutor or court authorized a warrant, if he proves: 1) that the officer applying for the warrant, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that created a falsehood, and, 2) that such statements and omissions were material to the finding of probable cause." *Tiapanco v. Elges*, 969 F.3d 638, 654 (6th Cir. 2020).

Harville asserts that Twardesky identified September 5, 2019 as the date of Hunt's assault, three days after Harville left the school and the football team. Detective McCabe testified at the "swear to" hearing that Harville assaulted Hunt on September 5, 2019 based on Twardesky's representation.  The judge did not have knowledge that Harville had left the school and the team on September 2, 2019.  Twardesky testified as to whether August 29, 2019 was a possible assault date, that he did not remember and did not know if that date was a typo. Twardesky made no effort to determine if Harville was actually present, either on August 29, 2019 or September 5, 2019.  (Twardesky Dep. at 55, 57; ECF No. 27, PageID.593) It was APA Sparling, not Twardesky, who indicated that August 29,

2019 may have been the date of the assault, after Harville's lawyer indicated that Harville had left the school on September 2, 2019, prior to the September 5, 2019 assault date set forth on the complaint.   Twardesky submitted a warrant request for a specific charge for the  specific date of September 5, 2019 against Harville. (Twardesky Dep. at 53, 56, 70, 101; ECF No. 27, PageID.592-.593, 597; Warrant Request, ECF No. 27, PageID.437)

Twardesky's requested a warrant for the September 5, 2019 assault date against Harville, where Harville was no longer at the school or a member of the football team.   Harville has created a genuine issue of material fact that Twardesky's statement was either knowingly and deliberately made or with reckless disregard for the truth.   The assault date asserted by Harville was material to the finding of probable cause since the judge had no knowledge that Harville was no longer a student at the school at the time of the alleged assault on September 5, 2019.   Twardesky's claim that the date on the complaint was a typo in light of the victims' statements creates a genuine issue of fact since APA Sparling never moved to change the assault date on the complaint.   Harville is not entitled to qualified immunity as to the false arrest claim.

### 3.    Count I, Malicious Prosecution

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit articulated the elements of a § 1983 claim for malicious prosecution: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Sykes*, 625 F.3d at 309–10).

There is no dispute that a criminal prosecution was advanced against Harville and Twardesky made the decision to seek prosecution of Harville.   Based on the above discussion, there is a genuine issue of material fact that there lacked probable cause because the date on the complaint was September 5, 2019 and Harville had left the school and the team prior to that date, on September 2, 2019. The complaint against Harville was eventually dismissed.   Harville has met the factors for a malicious prosecution claim and created a genuine issue of material fact as to whether the complaint lacked probable cause based on the date alleged in

the complaint.   Twardesky is not entitled to qualified immunity as to the malicious prosecution claim.

### 4. Count II, Equal Protection Claim

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir.1995). To state a claim for selective prosecution/enforcement, a plaintiff must establish three elements. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). First, the state actor must single out a person belonging to an identifiable group for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. *Id*. Second, he must initiate prosecution with a discriminatory purpose. *Id*. Third, the prosecution must have a discriminatory effect on the group to which the individual belongs. *Id*. There is a "strong presumption that state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Id*.   As to the first element, "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside [his] category were not prosecuted." *Stemler*, 126 F.3d at 873; *Cunningham v. Sisk*,

2003 WL 23471541, *9 (E.D. Tenn. Dec. 4, 2003) (plaintiff was required to show that similarly situated persons outside his race were not arrested, searched, and/or given traffic citations for speeding under comparable circumstances).

Harville in this case has shown that as to the first element, non-black football players were not prosecuted. Although Twardesky claims that the school was not aware of the race of the players prior to requesting the warrant, Twardesky testified that he visited the school's website to see who was on the team. APA Sparling printed out a color team photo and underlined the name of some of the players and circled the faces of the others. (Twardesky Dep. at 55-56, 101; ECF No. 27, PageID.593, .604; Sparling Dep. at 75-77, 107; ECF No. 27, PageID.998, .1006) A power point was also prepared which identified certain Black players by their race. (Sparling Dep. at 24, 30, 91; ECF No. 27, PageID.985, .987, .1002; Powerpoint, ECF No. 27, PageID.1094-.1109) There was testimony that White players Grant and Ethan were the main ones engaging in broom-sticking; they were not prosecuted, whereas seven Black players were charged. (Twardesky Dep. at 21-22, 47, 105, 124; ECF No. 27, PageID.584-.585, .591, .605, .610; Sparling Dep. at 28-29; ECF No. 27, PageID.986)

As to the second and third elements, to show a discriminatory purpose, a plaintiff can proffer evidence that an official chose to prosecute or engage in some

action in part because of its adverse effect on an identifiable group.  *King v. City of Eastpointe*, 86 F. App'x 709, 802 (6th Cir. 2003).  Harville has shown that Twardesky only submitted warrant requests for Black players, and none for White players.  APA Sparling testified that he would have considered warrant requests for anyone, including the White players, but that he wasn't presented with any such requests.  (Sparling Dep. at 23, 25-26, 59-69, 100; ECF No. 27, PageID.985-.986, .994-.996, .1004).

Based on the above, there remains a genuine issue of material fact that Twardesky prosecuted Harville in violation of his equal protection rights.  The jury could find that Twardesky is not credible when he testifies that he did not know the race of the students for whom he sought warrants.  There is no dispute of fact that only Black players were prosecuted, and no White players were prosecuted, even though witnesses identified White players as engaging in the assaults.  Twardesky is not entitled to qualified immunity as to the equal protection violation claim.

### D.    Count III, Municipal Liability

A municipality cannot be held liable under § 1983 on the theory of *respondeat superior*.  *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). A municipality is only responsible "when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. There must be an "affirmative link between the policy and the particular constitutional violation alleged" for the municipality to be held responsible. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Proof of one incident of unconstitutional activity is insufficient to impose municipal liability. *Id.* at 823-24. The evidence must show an unconstitutional policy or practice which was the "moving force" behind the officers' actions. *Bellamy,* 729 F.2d at 421. The evidence can be shown by a written policy, and, if not, by circumstantial evidence. *Monell,* 436 U.S. at 692-94. The plaintiff has the burden of proof to establish the unconstitutional policy and link it with both the municipality and the injuries at issue. *Coogan v. Wixom,* 820 F.2d 170, 176 (6th Cir. 1987).

Defendants argues that Harville asserts an unfounded *Monell* claim against the City of Warren predicated on a failure to train its police force on matters of diversity, which led to race-based discrimination against Harville. Defendants claim that there are written policies which require the police force to treat all members of the public equally without regard to any protected classification or disability. Ex. 16 to Motion. Defendants further assert that Harville failed to show

that there was a policy or practice that resulted in the deprivation of his civil rights. (ECF No. 24, PageID.139)

In response, Harville asserts that Twardesky was dismissive of his implicit bias training.   (Twardesky Dep. at 16-17, ECF No. 27, PageID.583) Harville also cites the opinion in *Howlett v. City of Warren*, Case No. 17-CV-11260, 2019 WL 4450984 (E.D. Mich. Sept. 16, 2019) where the district court discussed Warren's troubling history of exclusion and racism and that based on that opinion regarding lack of training, municipal liability should also be applied in this action.

A review of the *Howlett* case shows a troubling history of exclusion and racism within the City of Warren.   However, that case involved an employment claim.   Although the exclusion and racism problems could be applied to police officers' actions as they relate to how they investigate cases involving Black suspects, Harville has not provided any evidence of such, other than citing the *Howlett* case.   The Court cannot conclude that the City of Warren engaged in racist policies, as it applies to investigating crimes, without any evidence to show such a policy exists.   The *Monell* claim that the City of Warren has a racist policy when investigating cases must be dismissed.

Harville also asserts that the City of Warren's policy that a request for a warrant without regard to probable cause, is unconstitutional.   This is an unwritten

19

practice which the City engages in and led directly to Harville's wrongful arrest and prosecution.   Defendants admit it is a policy that detectives are to prepare a Request for Warrant Authorization where an assault victim reports the identity of his assailant.   Defendants argue that this is not an improper policy.

Based on Defendants' admission that there is a practice and policy that requests for warrant authorizations must be made, even though there may not be probable cause to support such, Harville has created a question of fact as to whether the City of Warren's policy and practice is unconstitutional.   The *Monell* claim as to requesting warrant authorizations without probable cause on assault cases remains.

### E.      Governmental Immunity in Count IV, Gross Negligence

Government employees can be held liable under Michigan tort law for gross negligence, defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). However, Michigan courts have "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467  (2004); *see also Sudul v. City of Hamtramck*, 221 Mich. App. 455 (1997).

In this case, Defendants argues that Harville's claim is that Twardesky investigated and pursued charges against him because he is Black.  This is a charge of discrimination, which is an intentional tort and governmental immunity does not apply to intentional torts.   In response, Harville asserts that Twardesky's conduct caused a misdemeanor charge against Harville for a crime Twardesky knew he did not commit and that such conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Harville.

In light of the above analysis on the malicious prosecution claim, there remains a question of fact that Twardesky's investigation of Harville created a genuine issue of material fact as to the gross negligence claim.   The Court agrees that if the claim was as to discrimination based on race, then such is an intentional tort and does not constitute gross negligence.

## IV.   CONCLUSION/ORDER

Based on the above, there remain issues of fact as to some of the claims noted above.   Accordingly,

IT IS ORDERED that the Motion for Summary Judgment **(ECF No. 24)** filed by Defendants City of Warren, James Twardesky and Gregory Booton is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant Gregory Booton is DISMISSED. Defendants City of Warren and James Twardesky remain as defendants.

IT IS FURTHER ORDERED that ETHAN VINSON, identified as a defendant on the Court's docket, is DISMISSED since he is not a named-Defendant on the Complaint. Ethan Vinson filed an appearance as counsel on behalf of certain defendants in this case. *See* ECF No. 6. However, it may be that Attorney Vinson did not choose the appropriate defendant/s he is representing when the Notice of Appearance was filed. Attorney Vinson may revise his appearance to reflect the appropriate defendant/s he is representing. *See* www.mied.uscourts.gov, "E-filing" tab for guidance and assistance.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:   September 30, 2024

22